MITCHELL SILBERBERG & KNUPP LLP
CHRISTINE LEPERA (*PHV Appl forthcoming*)
12 East 49th Street, 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
Facsimile: (212) 509-7239
Email: ctl@msk.com

MITCHELL SILBERBERG & KNUPP LLP
AARON M. WAIS (SBN 250671)
MATTHEW S. BEASLEY (SBN 288070)
11377 West Olympic Boulevard
Los Angeles, California 90064
Telephone: (310) 312-2000
Facsimile:  (310) 312-3100
Emails: amw@msk.com; msb@msk.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THA LIGHTS GLOBAL DIGITAL, LLC, a California limited liability company; THA LIGHTS GLOBAL DIGITAL TOURING, LLC, a California limited liability company; THA LIGHTS GLOBAL PUBLISHING, LLC, a California limited liability company; THA LIGHTS GLOBAL RECORDS TOURING, LLC, a California limited liability company; THA LIGHTS GLOBAL RECORDS, LLC, a Delaware limited liability company, | CASE NO. 2:18-cv-03601 **COMPLAINT FOR:** |

**COMPLAINT FOR:**

**(1) FALSE OR MISLEADING ADVERTISING [15 U.S.C. § 1125]**

**(2) UNFAIR COMPETITION [COMMON LAW AND STATUTORY]**

**(3) BREACH OF FIDUCIARY DUTY**

Plaintiffs,

v.

MIGUEL VALDETTARO SOLANO (a/k/a Miguel Solano, a/k/a Miguel Valdettaro); FYREHOUSE ENTERTAINMENT, LLC, a Georgia limited liability company; FYREHOUSE MEDIA; and Does 1-10, inclusive,

Defendants.

**(4) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

**(5) FRAUDULENT CONCEALMENT**

**(6) CONVERSION**

**(7) DECLARATORY RELIEF**

**(8) EXPULSION FROM LIMITED LIABILITY COMPANIES**

**JURY TRIAL DEMAND**

## COMPLAINT

1.      Plaintiffs Tha Lights Global Records, LLC ("TLG Records"), Tha Lights Global Records Touring, LLC ("TLG Records Touring"), Tha Lights Global Digital, LLC ("TLG Digital"), Tha Lights Global Digital Touring, LLC ("TLG Digital Touring"), and Tha Lights Global Publishing, LLC ("TLG Publishing") (collectively the "TLG Entities" or "Plaintiffs") are a group of privately held companies that, together, provide full-service, next generation services in management, music production, marketing and promotion, touring, merchandise, and media. The companies' success is powered by its network of young digital influencers and innovative marketing strategies, amplified by live events and tours, and driven by a modern day record label. In this way, the TLG Entities are devoted to turning their artists into superstars.

2.      This action arises out of the prior and ongoing wrongful acts of Defendant Miguel Solano ("Solano"). Solano purports to be a member of the TLG Entities and previously acted in a managerial capacity for the TLG Entities. As the TLG Entities' reputation grew and it began to enjoy success and reap the fruits of their labor, Solano saw an opportunity to enrich himself.

3.      As discussed in more detail below, instead of working with the members of the TLG Entities to grow the companies and contribute to their collective success, Solano began to engage in surreptitious and unlawful activities, seeking to divert funds and opportunities belonging to the TLG Entities to himself and his related entities, the other defendants.

4.      In doing so, he wrongly used the TLG Entities' trade name and reputation to obtain economic opportunities and business for himself and, in doing so, confused the public and actively damaged the TLG Entities and their brand. He also damaged the TLG Entities and their reputation by taking actions that threatened the success of their artists and were completely contrary to the best interests of the companies and their clients.

Mitchell
Silberberg &
Knupp LLP

10001322.1

5.      Moreover, Solano sought to and did, in fact, conceal his wrongful conduct from the TLG Entities and their members. The TLG Entities are confident that further investigation will reveal additional wrongful acts beyond those described below. By this action, the TLG Entities seek to enjoin Solano and the other defendants from engaging in any further actions that may harm the TLG Entities, the TLG Entities' reputations, or deprive any of them of their business opportunities and assets; to prevent Solano from continuing to wrongly use and infringe upon the TLG Entities' trade name and reputation; to obtain damages for the wrongful acts inflicted upon them by Solano and the other defendants; and to prevent Mr. Solano from having the ability to represent himself to the public, existing clients and artists, prospective clients and artists as still representing the TLG Entities and otherwise expelling him from the companies because of his wrongful conduct.

## THE PARTIES

6.      TLG Digital is a California limited liability company, and has its principal place of business in Los Angeles County.

7.      TLG Digital Touring is a California limited liability company, and has its principal place of business in Los Angeles County.

8.      TLG Publishing is a California limited liability company, and has its principal place of business in Los Angeles County.

9.      TLG Records Touring is a California limited liability company, and has its principal place of business in Los Angeles County.

10.     TLG Records is a Delaware limited liability company, and has its principal place of business in Los Angeles County.

11.     Defendant Miguel Valdettaro Solano (hereinafter "Solano"), also known as Miguel Solano, also known as Miguel Valdettaro, is an individual residing in Los Angeles County.

12.     Upon information and belief, Defendant Fyrehouse Entertainment, LLC, is a Georgia limited liability company and has its principal place of business in Los Angeles County.  The TLG Entities are informed and believe that Solano is the owner and manager of Fyrehouse Entertainment, LLC.

13.     The TLG Entities are informed and believe that Defendant Fyrehouse Media is a d/b/a or alter ego of Solano and Fyrehouse Entertainment, LLC. Fyrehouse Entertainment, LLC and Fyrehouse Media are referred to hereinafter, collectively, as "Fyrehouse."

14.     At all times herein mentioned, each Defendant was the agent, co-conspirator, or aider and abettor, of one or more of the other Defendants, was acting within the course and scope of such agency, and/or acting in furtherance of such conspiracy, and/or aiding and assisting one or more of the other Defendants in committing the wrongful acts alleged herein, and is liable to the TLG Entities as alleged herein.

15.     The true names and capacities, whether individual, corporate, or otherwise, of Defendants named herein as DOES 1 through 10, inclusive, are unknown to the TLG Entities, who therefore sue said Defendants by such fictitious names.  The TLG Entities will amend this Complaint to set forth the true names and capacities of said Defendants when they are ascertained pursuant to Federal Rules of Civil Procedure 15 and 21.  The TLG Entities are informed and believe that each of said Defendants, including DOES 1 through 10, inclusive, participated in all or some of the acts as alleged hereinafter and are liable to the TLG Entities as alleged herein.

16.     The TLG Entities are informed and believe that there existed a unity of interest and ownership between and among Solano, Fyrehouse, and DOES 1 through 10, such that any individuality or separateness between them ceased.  Each of Defendants Solano, Fyrehouse, and DOES 1 through 10 is the alter ego of each of the other and, at all times herein mentioned, each of Defendants Solano, Fyrehouse,

1    and DOES 1 through 10 has been the mere shell, instrumentality, and conduit

2    through which the other have carried on business, exercising complete control over

3    such Defendants to the extent that any individuality or separateness of the entity

4    Defendants does not exist.

5

6                              **JURISDICTION AND VENUE**

7         17.    This is an action arising under the Lanham Act, 15 U.S.C. § 1051, *et*

8    *seq*, and § 1125 in particular, and under California statutory and common law.

9         18.    This Court has subject matter jurisdiction over this matter pursuant to

10   15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b) in that it involves an

11   action arising under the Lanham Act, 15 U.S.C. §§ 1125(a).

12        19.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367

13   over those claims of Plaintiffs that arise under the laws of the State of California

14   because they are so related that they form part of the same case or controversy

15        20.    Defendants are subject to personal jurisdiction in the State of California

16   because Solano is a resident of the State of California and regularly conducts

17   business in the State of California and Fyrehouse have their principal places of

18   business, maintain offices and regularly conduct business in the State of California.

19   Additionally, Defendants have knowingly and intentionally engaged in acts in

20   violation of the TLG Entities' rights in the State of California, and have been and

21   are causing injury to the TLG Entities in the State of California.  Further,

22   Defendants entered or claim to have entered into relationships that are the subject of

23   this action in the State of California, and the duties and obligations thereunder were

24   to be performed in substantial part in the State of California, including in Los

25   Angeles County.

26        21.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

27   in that the majority of parties, including Defendants, reside in this judicial district or

28   have their principal place of business in this judicial district; a substantial part of the

Mitchell
Silberberg &
Knupp LLP

10001322.1

events giving rise to this Complaint occurred in this judicial district; and Defendants have performed obligations which were to be performed in this judicial district.

## GENERAL ALLEGATIONS

### The TLG Entities' Business and Reputations

22.     The TLG Entities are a group of companies that provide full-service, next generation music services in management, music production, marketing and promotion, touring, merchandise, and media. The companies are powered by their network of young digital influencers and innovative marketing strategies, including social media promotion campaigns via websites such as Instagram and Musical.ly. These efforts are amplified by live events and tours, and driven by a modern day record label. In this way the TLG Entities turn their artists into superstars.

23.     The TLG Entities collectively promote themselves nationally to the public and to potential clients using the trade name "Tha Lights Global." This includes, in part, promoting itself online through a website using the domain name www.thalightsglobal.com. The TLG Entities have invested enormous time, effort, and resources into advertising and promoting its high quality services under and in connection with Tha Lights Global trade name.

### Solano's Fiduciary Duties and Improper Conduct

24.     Solano purports to be a member of each one of the TLG Entities and, during the relevant time period, acted in a managerial capacity. (He has since baldly stated that he has "resigned" without explaining what this means.) By virtue thereof, Solano stood and stands in a fiduciary relationship to each of the TLG Entities and owes to them the highest duties of loyalty, good faith, care, and full disclosure. Such duties precluded and preclude Solano from taking the actions that he took and concealed, including: (i) competing personally or through any other entity with the TLG Entities, (ii) diverting corporate opportunities from the TLG Entities to himself or to his companies, (iii) interfering with the TLG Entities' contracts with artists, or

others, (iv) soliciting artists signed to the TLG Entities to leave those companies and work with him or his entities, (v) wrongly trading off the TLG Entities' trade name and reputation in order to mislead the public, clients, and artists so as to divert potential business opportunities and clients from the TLG Entities to him and his companies and (v) otherwise acting in ways detrimental to and contrary to the best interests of the companies and their artists.

25.    Indeed, rather than acting in the best interests of the TLG Entities, Solano has instead engaged in cumulative and ongoing misconduct, including but not limited to the following:

**TLG Digital**

26.    TLG Digital's business includes creating and pursuing social media promotional campaigns for its artists and others. On multiple occasions, Solano diverted a social media promotion campaign opportunity that rightfully should have been belonged to TLG Digital to himself and Fyrehouse and caused he and Fyrehouse to be paid for the campaign instead of TLG Digital.

27.    As discussed further below, in the course of doing so, Solano would misappropriate and use Tha Lights Global trade name to confuse clients and the public for the purpose of acquiring the campaign or business opportunity for his and Fyrehouse's own purposes and benefit.

28.    In addition, upon information and belief, Solano failed to follow through on what he had promised clients and otherwise failed to perform up to the high standards for which the TLG Entities are known, which had the effect of damaging the reputation of Tha Lights Global name, which harmed TLG Digital but also all of the other TLG Entities.

29.    In addition, because Solano was using Tha Lights Global name to capture opportunities for himself, upon information and belief, additional opportunities were lost because Solano would take leads for the TLG Entities and capitalize on them himself or through Fyrehouse.

30.     Solano did not have authority from any of the TLG Entities to divert these and other corporate opportunities to himself, to his alter-ego Fyrehouse, or to any of the other Defendants.

**TLG Records**

31.     As to TLG Records, Solano acted against the best interests of the company and its clients and artists.

32.     For example, in or around January 2018, Solano arranged and facilitated a recording session whereby an artist under an exclusive recording contract with TLG Records recorded music with an unaffiliated artist in exchange for payment (the "Side Artist Session").  Solano arranged and facilitated the Side Artist Session without the authorization of TLG Records.

33.     Solano charged only $5,000 for the TLG Records' artist's services which was a flagrant undercharge, as the TLG Records' artist's services for the Side Artist Session were, on information and belief, worth at least $50,000. He also provided the artist's services for a project that the artist should not have been associated with.

34.     In these ways and others, Solano acted in direct contradiction to the business plan for building up the recording artist's image, reputation, and the value of his services in the marketplace. The TLG Entities spent enormous time, effort, and resources into building the reputation of the artist and the demand for his music, which included viral marketing of the artist and strictly limiting access to the artist, such that consumers would be directed to the artist's music only. Indeed, limiting side-artist features to none or a carefully curated few drives up demand and pricing and allows for more focused events. Solano's actions interfered with this plan, thereby harming Tha Lights Global name and reputation.

35.     In addition, upon information and belief, Solano also paid himself a management commission of 20% of the ***gross*** amount paid the TLG Records' artist for the Side Artist Session, when any such commission was owed to TLG Records.

Mitchell
Silberberg &
Knupp LLP

10001322.1

36. Upon information and belief, Solano further paid himself an additional 5% commission of the *gross* amount paid the TLG Records' artist for the Side Artist Session, which payment Solano characterized as a "legal and accounting fee." However, the TLG Entities are informed and believe that Solano:

    a.    failed to pay the legal fees incurred in connection with the Side Artist Session;

    b.    failed to pay the accounting fees incurred in connection with the Side Artist Session; and

    c.    failed to route the subject artist's share of the Side Artist Session fee through the subject artist's business manager for tax tracking purposes.

37. The TLG Entities are informed and believe that, at the same time Solano improperly arranged, and paid himself a commission for, the Side Artist Session, Solano was being paid by agents of the unaffiliated artist.  The TLG Entities are further informed and believe that Solano has attempted to set up other artist-related side deals for himself, at the expense of TLG Records and the rest of the TLG Entities.

38. On another occasion, Solano wrongfully attempted to set up a merchandising business for the TLG Records' recording artist without the knowledge of Tha Lights Global and outside of the TLG Entities, notwithstanding that TLG Records owned the merchandise rights. In doing so, Solano led the artist to believe that the artist would receive 85% of gross revenue, which was wrong and would have meant that all costs would have to be paid for out of the remaining 15% of gross revenues – a business impossibility.

39. On another occasion in 2018, Solano, without permission or knowledge of TLG Records, withdrew $16,000 from a royalty account at Vydia and directed it to himself, instead of TLG Records. On information and belief, Solano has made

Mitchell
Silberberg &
Knupp LLP

10001322.1

**COMPLAINT**

1   additional unjustified payments to himself from monies belonging to the TLG

2   Entities.

3       **TLG Records Touring**

4       40.     On another occasion, in 2018, Solano, without informing or receiving

5   permission, entered into an agreement with an unaffiliated concert promoter

6   whereby a TLG artist was to perform a concert in El Paso, Texas (the "El Paso

7   Concert").

8       41.     In booking this performance, Solano, among other things, chose a

9   promoter with whom the TLG Entities would not have worked with and a venue that

10  was wrong for the artist, which again harmed the TLG Entities' trade name and

11  reputation with the public and its existing and prospective clients and artists and

12  threatened to harm the artist himself.

13      42.     Solano's conduct, in addition to being wholly wrongful, was reckless as

14  he failed to go through the proper channels and entities to book the show such that

15  he risked causing the TLG Entities to violate the law and also would have left the

16  performance uninsured, thereby risking potential liability for TLG Records Touring

17  and its artist.

18      43.     In addition, Solano caused the promoter of the El Paso Concert to pay

19  Fyrehouse a $22,000 deposit in connection with this unauthorized concert

20  agreement.

21      44.     The TLG Entities discovered the El Paso Concert prior to the scheduled

22  date thereof, and advised the El Paso Concert promoter that Solano had purported to

23  arrange the El Paso Concert without the authority and that the subject artist would

24  not perform as Solano had purported to promise.

25      45.     The TLG Entities are informed and believe that, when the El Paso

26  Concert promoter discovered that he had been duped by Solano, the El Paso Concert

27  promoter demanded the return of the $22,000 deposit that had been paid to

28  Fyrehouse.  After the TLG Entities also demanded that Solano return the $22,000 to

Mitchell
Silberberg &
Knupp LLP

10001322.1

the El Paso Concert promoter, Solano represented to the TLG Entities that he had returned the $22,000 deposit by wire transfer.  However, the TLG Entities are informed and believe that, in order to cover his tracks, Solano created a fake wire confirmation and did not actually return the monies to the El Paso Concert promoter at that time. While, upon information and belief, Solano eventually paid back some of the monies, he did not repay the entire $22,000 deposit.

**TLG Publishing**

46.     As to TLG Publishing, Solano took a staff producer, for whom TLG Publishing owned the publishing rights, to meet with a major publisher without the knowledge of anyone else at the company. Upon information and belief, Solano was again trying to divert opportunities and revenues belonging to TLG Publishing away from the company to himself or others affiliated with him.

**All Companies**

47.     Beyond the foregoing, Solano also engaged in wrongful conduct as to all of the TLG Entities. As discussed above, Solano misappropriated and used Tha Lights Global trade name to confuse the public and to divert business, clients, and artists from the TLG Entities to himself and Fyrehouse.

48.     In addition, because Solano was using Tha Lights Global trade name to promote himself and Fyrehouse and to divert opportunities from the TLG Entities, upon information and belief, additional business was lost to the TLG Entities.

49.     Solano did not perform services up to the standards of the TLG Entities and also mismanaged artists and clients in a manner that damaged the reputations of Tha Lights Global name and the TLG Entities.

50.     Finally, while Solano claims to have "resigned," he continues to misappropriate and promote himself and Fyrehouse, including online and in social media, by misappropriating Tha Lights Global trade name, which has the effect of confusing the public and potential clients and artists, thereby diverting business

from the TLG Entities and damaging the reputation and goodwill of the TLG Entities and their trade name.

## FIRST CAUSE OF ACTION

### (Violation of the Lanham Act, 15 U.S.C. § 1125

### By the TLG Entities Against Solano and Fyrehouse)

51.     The TLG Entities reallege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 50, above.

52.     As alleged above, the TLG Entities collectively promote themselves nationally to the public and to potential clients and artists using the trade name "Tha Lights Global." The TLG Entities have invested enormous time, effort, resources advertising and promoting its high quality services under and in connection with Tha Lights Global trade name.

53.     As part of his larger wrongful misconduct, Defendants have actively misappropriated and used in commerce and continue to actively misappropriate and use in commerce the TLG's Entities' trade name and reputation to falsely and deceptively mislead the public, clients, and potential clients into believing that they are conducting and soliciting business on behalf of the TLG Entities and that the TLG Entities are approving their business and solicitation of business when, in reality, the TLG Entities have not so authorized Defendants and Defendants are diverting any business opportunities to themselves.

54.     Defendants actions are likely to cause confusion and have caused confusion, as well as deceived the public and potential clients as to the affiliation of Defendants to the TLG Entities and made it appear as if they are acting for the TLG Entities when they are not. This has not only resulted in a diversion of business but has confused the public and potential clients and artists, as well as minimized and diminished the TLG Entities' reputation and stature with the public and with those with who the TLG Entities do business.

55.     To the extent that Defendants used Tha Lights Global name to mislead the public, potential clients and artists and to solicit and divert business away from the TLG Entities and to themselves and to the extent that they continue to do so, they have and are misleading the public and trading on the name and goodwill of the TLG Entities, without compensation and permission.

56.     The TLG Entities individually and collectively have already been, and are likely to be further injured as a result of the foregoing misrepresentations, by a direct diversion of market share and business to Solano and Fyrehouse, in an amount to be determined at trial, and by a lessening of each of the TLG Entities' good will and reputation, in an amount to be determined at trial. Indeed, the TLG Entities are each entitled to their respective share of any and all profits earned by Defendants or their agents, by reason of the unlawful acts complained of herein as provided by law.

57.     Moreover, unless enjoined, Defendants will continue to cause irreparable injury to the TLG Entities.  Accordingly, the TLG Entities are each entitled to equitable and injunctive relief.

58.     Because this is an exceptional case involving calculated and willful misconduct by Defendants, the TLG Entities are each entitled to recover treble damages, treble profits, and attorneys' fees under 15 U.S.C. § 1117(a).

**SECOND CAUSE OF ACTION**

**(Statutory and Common Law Unfair Competition**

**By the TLG Entities Against Solano and Fyrehouse)**

59.     The TLG Entities reallege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 58, above.

60.     Based on the acts described herein – including but not limited to Defendants falsely and deceptively hold themselves out to the public and potential clients as soliciting business on behalf of Tha Lights Global when, in reality, they

Mitchell
Silberberg &
Knupp LLP

10001322.1

13

**COMPLAINT**

were diverting any business opportunities to Solano and Fyrehouse, Defendants have committed unfair, unlawful, and/or fraudulent business acts and practices in violation of California Business and Professions Code § 17200 *et seq* and California common law.

61.     As a result of Defendants' aforesaid conduct, the TLG Entities have suffered substantial damage and irreparable harm constituting an injury for which the TLG Entities have no adequate remedy at law.  Unless this Court enjoins Defendants' conduct, each of the TLG Entities will continue to suffer irreparable harm.  Each of the TLG Entities also has suffered loss of profits and other damages as a result of Defendants' aforesaid conduct.

62.     The TLG Entities are each entitled to preliminary and permanent injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

63.     The TLG Entities are each entitled to damages pursuant to California common law.

64.     The TLG Entities are each entitled to restitution pursuant to California's unfair competition statute, Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiffs are not seeking damages at law pursuant to this statutory claim.

## THIRD CAUSE OF ACTION

### (For Breach of Fiduciary Duty By the TLG Entities Against Solano)

65.     The TLG Entities reallege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 64, above.

66.     By virtue of his acting in a managerial capacity and as a purported member of the TLG Entities, and by his position of trust and confidence, Solano owed fiduciary duties to the TLG Entities, and each of them, which included the duties always to act with the utmost good faith and in the best interest of the TLG Entities, to refrain from acting in any manner that was adverse to the interests of the TLG Entities, to act with complete loyalty to the TLG Entities, to act in the utmost

Mitchell
Silberberg &
Knupp LLP

10001322.1

good faith toward the TLG Entities, to act with reasonable care for the benefit of the TLG Entities, to act with undivided loyalty to the TLG Entities, and not to gain any personal advantage for their own benefit adverse to the interests of the TLG Entities.

67.     Through the conduct as alleged herein, Solano breached his fiduciary obligations to the TLG Entities.

68.     As a direct and proximate result of Solano's breaches of his fiduciary duties, the TLG Entities have sustained damages in an amount to be proven at trial, including but not limited to monetary damages, lost business, and reputational damage.

69.     Unless restrained and enjoined by this Court, Solano will continue to breach his fiduciary duties by, *inter alia*, continuing to retain, use, and dissipate funds of the TLG Entities, and property derived therefrom, purporting to act on behalf of the TLG Entities, and misrepresenting to third persons that he is an authorized agent of the TLG Entities.

70.     Solano is a constructive trustee of the funds of the TLG Entities, and the revenues, profits, property, and/or other benefits accrued to Solano as a result of the misappropriation of the funds of the TLG Entities, and other wrongdoing alleged herein. In addition to damages, the TLG Entities are entitled to the imposition of a constructive trust over all such funds, revenues, profits, property, and/or other benefits of the TLG Entities, and for a complete accounting of same.

71.     The TLG Entities are informed and believe that, in doing the acts alleged herein, Solano acted with oppression, fraud, and malice, and deliberately caused or intended to cause injury to the TLG Entities with full knowledge of the wrongfulness of Solano's conduct, that such conduct was carried on with a willful and conscious disregard of the rights of the TLG Entities, and subjected the TLG Entities to unjust hardship, and that, therefore, the TLG Entities should be awarded punitive and exemplary damages sufficient to punish Solano for engaging in this conduct and to deter similar conduct on his part in the future.

# FOURTH CAUSE OF ACTION

## (For Aiding and Abetting Breach of Fiduciary Duty By the TLG Entities Against Fyrehouse and DOES 1-10)

72.     The TLG Entities reallege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 71, above.

73.     The TLG Entities are informed and believe that Fyrehouse and DOES 1-10 knew that Solano was going to breach his fiduciary duties to the TLG Entities, as alleged herein.

74.     The TLG Entities are informed and believe that Fyrehouse and DOES 1-10 gave substantial assistance or encouragement to Solano to breach their fiduciary duties to the TLG Entities as alleged herein.

75.     The conduct of Fyrehouse and DOES 1-10 was a substantial factor in causing harm to the TLG Entities.

76.     As a direct and proximate result of such aiding and abetting, the TLG Entities have sustained damages in an amount to be proven at trial, including but not limited to monetary damages, lost business, and reputational damage.

77.     Unless restrained and enjoined by this Court, Fyrehouse and DOES 1-10 will continue to aid and abet Solano's breach his fiduciary duties by, *inter alia*, continuing to retain, use, and dissipate the funds of the TLG Entities, and property derived therefrom, purporting to act on behalf of the TLG Entities, and misrepresenting to third persons that he is an authorized agent of the TLG Entities.

78.     Fyrehouse and DOES 1-10 are constructive trustees of the funds of the TLG Entities, and the revenues, profits, property, and/or other benefits accrued to them as a result of the misappropriation of the funds of the TLG Entities and other wrongdoing alleged herein and, in addition to damages, the TLG Entities are entitled to the imposition of a constructive trust over all such funds, revenues, profits, property, and/or other benefits the TLG Entities, and for a complete accounting of same.

Mitchell
Silberberg &
Knupp LLP

10001322.1

79.     The TLG Entities are informed and believe that, in doing the acts alleged herein, Fyrehouse and DOES 1-10 acted with oppression, fraud, and malice, and deliberately caused or intended to cause injury to the TLG Entities, with full knowledge of the wrongfulness of their conduct, that such conduct was carried on with a willful and conscious disregard of the rights of the TLG Entities, and subjected the TLG Entities to unjust hardship, and that, therefore, the TLG Entities should be awarded punitive and exemplary damages sufficient to punish Fyrehouse and DOES 1-10 for engaging in this conduct and to deter similar conduct on their part in the future.

## FIFTH CAUSE OF ACTION

### (For Concealment, By the TLG Entities Against Solano)

80.     The TLG Entities reallege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 79, above.

81.     Solano owed the TLG Entities, fiduciary duties as manager.

82.     Solano intentionally failed to disclose certain facts to the TLG Entities.

83.     The TLG Entities did not know of the concealed facts.

84.     Solano intended to deceive the TLG Entities by concealing the facts.

85.     Had the omitted information been disclosed, the TLG Entities reasonably would have behaved differently.

86.     The TLG Entities were harmed by Solano's concealment.

87.     Solano's concealment was a substantial factor in causing the harm of the TLG Entities.

88.     The TLG Entities are informed and believe that, in doing the acts alleged herein, Defendants acted with oppression, fraud, and malice, and deliberately caused or intended to cause injury to the TLG Entities with full knowledge of the wrongfulness of their conduct, that such conduct was carried on with a willful and conscious disregard of the rights of the TLG Entities, and

Mitchell
Silberberg &
Knupp LLP

10001322.1

1  subjected the TLG Entities to unjust hardship, and that, therefore, the TLG Entities

2  should be awarded punitive and exemplary damages sufficient to punish Defendants

3  for engaging in this conduct and to deter similar conduct on their part in the future.

4

5  **SIXTH CAUSE OF ACTION**

6  **(For Conversion By The TLG Entities**

7  **Against Solano, Fyrehouse, and Does 1-10)**

8  89.     The TLG Entities reallege and incorporate herein by this reference each

9  and every allegation contained in Paragraphs 1 through 88, above.

10  90.     The TLG Entities have a right to possess the monies due to them by

11  virtue of their music recording, music publishing, music promotion, and music

12  touring services.

13  91.     Defendants intentionally and substantially interfered the with TLG

14  Entities' property by taking possession of, and/or diverting for Defendants' own

15  benefit, the TLG Entities' funds in an amount to be proven at trial.

16  92.     The TLG Entities did not consent to Defendants' taking possession of,

17  and/or diverting for Defendants' own benefit, the TLG Entities' funds.

18  93.     The TLG Entities were harmed by Defendants taking possession of,

19  and/or diverting for Defendants' own benefit, the TLG Entities' funds.

20  94.     Defendants' conduct was a substantial factor in causing the TLG

21  Entities' harm.

22  95.     The TLG Entities are informed and believe that, in doing the acts

23  alleged herein, Defendants acted with oppression, fraud, and malice, and

24  deliberately caused or intended to cause injury to the TLG Entities with full

25  knowledge of the wrongfulness of their conduct, that such conduct was carried on

26  with a willful and conscious disregard of the TLG Entities' rights, and subjected the

27  TLG Entities to unjust hardship, and that, therefore, the TLG Entities should be

28

Mitchell
Silberberg &
Knupp LLP

10001322.1

awarded punitive and exemplary damages sufficient to punish Defendants for engaging in this conduct and to deter similar conduct on their part in the future.

## SEVENTH CAUSE OF ACTION

### (For Declaratory Relief By The TLG Entities Against Solano)

96. The TLG Entities reallege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 95, above.

97. The TLG Entities contend as follows:

    a) Solano is no longer an officer of any of the TLG Entities;

    b) Solano has no authority to act for or on behalf of any of the TLG Entities on any matter; and

    c) Solano has no authority to represent to others or to hold himself out as having authority to act for or on behalf of any of the TLG Entities.

98. The TLG Entities are informed and believe that Solano denies the TLG Entities' contentions, contends otherwise, and is acting otherwise.

99. Because a real, actual, and existing controversy exists between the TLG Entities and Solano regarding the foregoing contentions, a prompt declaration of the rights and obligations of the parties is necessary.

## EIGHTH CAUSE OF ACTION

### (For Expulsion From Limited Liability Companies
### By The TLG Entities Against Solano)

100. The TLG Entities reallege and incorporate herein by this reference each and every allegation contained in Paragraphs 1 through 99, above.

101. To the extent that Solano is a member of the TLG Entities, the TLG Entities pray for a judicial order expelling and disassociating Solano as a member on the following grounds:

a)   Solano has engaged in, or is engaging in, wrongful conduct that has adversely and materially affected, or will adversely and materially affect, the TLG Entities' activities; and

b)   Solano has engaged in, or is engaging in, conduct relating to the TLG Entities' activities that makes it not reasonably practicable to carry on the activities with Solano as a member.

102.   Because of the foregoing conduct by Solano and to the extent that Solano is a member, the TLG Entities are entitled to a judicial order expelling and disassociating Solano as a member from the TLG Entities, and each of them, pursuant to Corporations Code section 17706.02.

**WHEREFORE,** Plaintiffs respectfully request judgment against Defendants as follows:

1.   Permanent mandatory and prohibitory injunctive relief designed to stop the foregoing wrongful conduct;

2.   For orders declaring the rights and obligations of the TLG Entities and Solano in accordance with the TLG Entities' contentions set forth herein.

3.   For orders, pursuant to Corporations Code section 17706.02, expelling and dissociating Solano as a member of each of the TLG Entities.

4.   Awarding restitution to each Plaintiff in an amount to be proven at trial;

5.   Awarding to each Plaintiff its actual damages in an amount to be proven at trial;

6.   Awarding to each Plaintiff its share of any and all profits earned by Defendants by reason of the unlawful acts complained of herein as provided by law;

Mitchell
Silberberg &
Knupp LLP

10001322.1

1     7.    Awarding to each Plaintiff exemplary damages, including punitive and

2  treble damages and treble profits for Defendants' willful and malicious behavior as

3  provided by law;

4     8.    Awarding to each Plaintiff its reasonable attorneys' fees, prejudgment

5  and post-judgment interest, and costs of suits as provided by law; and

6     9.    Granting other relief as may be properly sought or the Court may deem

7  just and proper.

8

9

10  DATED: April 27, 2018        MITCHELL SILBERBERG & KNUPP LLP
                           CHRISTINE LEPERA

11                           AARON M. WAIS
                           MATTHEW S. BEASLEY

12

13                           By:  /s/ Aaron M. Wais

14                               Aaron M. Wais
                               Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **DEMAND FOR JURY TRIAL**

Plaintiffs each individually and collectively demand a jury trial on all issues and claims so triable.

DATED: April 27, 2018                MITCHELL SILBERBERG & KNUPP LLP
                                     CHRISTINE LEPERA
                                     AARON M. WAIS
                                     MATTHEW S. BEASLEY


                                     By:   /s/ Aaron M. Wais
                                           Aaron M. Wais
                                           Attorneys for Plaintiffs

**COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

10001322.1